FILED

2015 Jul-27  PM 02:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISON**

Jane Doe,

      Plaintiff,

vs.

Rick Singleton, in his official capacity as
Sheriff of Lauderdale County, Alabama,

      Defendant.

Case No. 3:15-cv-01215-AKK

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND
RESPONSE TO DEFENDANT'S OBJECTION TO PLAINTIFF'S EMERGENCY
MOTION FOR EXPEDITED TEMPORARY RESTRAINING ORDER/PRELIMINARY
INJUNCTION**

Plaintiff is entitled to emergency relief securing her right to an abortion. Without relief

from this Court she will be forced to carry her pregnancy to term against her will and in violation

of her Constitutional rights. Time is of the essence. Although abortion is very safe, each week

increases the risks associated with the procedure. After the point of viability, the right to

abortion will evaporate altogether. Because of these unique characteristics, abortion is unlike

any other medical procedure that could otherwise be delayed. Moreover, when a woman is

pregnant she will either need maternity care or an abortion – in either case, the medical care is

medically necessary. In the former case, the Defendant does not require a court order, but in the

latter case Defendant does. By requiring Plaintiff to seek leave from a state court judge to obtain

an abortion, Defendant has created a system that allows her constitutional right to be explicitly

vetoed by a judge, or vetoed simply because time will run out before she can obtain an order.

Indeed, the district court judge of Lauderdale County – to whom such a motion would be

presented – explicitly said she would deny Plaintiff's request for transport for the abortion. (Declaration of Elizabeth Berry, attached as Ex. 7.)  As a consequence, Defendant has more than burdened her right to obtain an abortion; he has erected an impenetrable barrier and has violated Ms. Doe's constitutional rights.

### I.        Defendant is Violating Plaintiff's Constitutional Right to an Abortion

Defendant admits that the jail has a policy of categorically denying inmates access to abortion absent a court order as part of his policy that requires a court order for "elective" health care.  Def.'s Br. at 2.  Contrary to Defendant's claim, this is not a facial challenge to that policy; rather this is the quintessential as-applied challenge.  Indeed, Plaintiff is challenging Defendant's policy as applied to her request for an abortion, a constitutionally protected medical procedure. As Plaintiff explained in her initial motion, this policy imposes an unconstitutional "undue burden" on her right to an abortion by "placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus."  *Planned Parenthood v. Casey*, 505 U.S. 833, 877 (1992).  The Policy in fact imposes a ban on abortion that an inmate may circumvent only if she obtains a court order lifting the ban in her particular case.  She will not obtain an abortion unless her lawyer asks the court to order Defendant to grant her a furlough[1] or supervised transport; the judge decides to grant – rather than deny – that motion; and only if the judge does so before, as a practical matter, abortion is no longer an option.  The Policy thus gives the court unconstitutional veto power over a woman's decision to have an abortion.  Yet, over forty years ago, in *Roe v. Wade*, the Supreme Court held that the right to privacy, "founded in the Fourteenth Amendment's concept of personal liberty . . . encompass[es] a *woman's* decision whether or not to terminate her pregnancy."  410 U.S. 113, 153 (1973) (emphasis added).  Because the state

---

[1] Defendant claims that he cannot grant Plaintiff a medical furlough "as a matter of law" but then provides no legal authority for that proposition.

cannot ban abortion, it cannot delegate to anyone veto power over the woman's decision, regardless of whether that power will in fact be exercised.  *Planned Parenthood v. Danforth*, 428 U.S. 52, 69 (1976).

Even looking to the *Turner v. Safley* test, the Policy violates pregnant inmates' constitutional rights by interposing a significant roadblock not justified by any reasonable relation to legitimate penological interests and does not satisfy any of the *Turner* factors.  At the outset, Defendant's heavy reliance on the Fifth Circuit's opinion in *Victoria W. v. Larpenter*, 369 F.3d 475 (5th Cir. 2004), is misplaced.  The foundation for ruling could not have been clearer: "Critically, the options allowed by the Parish's policy, unlike the policy in *Monmouth*, ensure that a pregnant inmate who wants an abortion *will* obtain a court order."  *Id*. at 488 (emphasis added).  Here, by contrast, the sheriff's policy offers no assurance that a pregnant inmate can ever obtain an abortion; all it offers is a chance to seek relief under a procedure he created with neither law nor procedure governing its operation, leaving Plaintiff with no recourse if a judge denies her application.  And in fact, the evidence here shows that Plaintiff's request would be denied by the district court judge of Lauderdale County (Ex. 7), and then Plaintiff would be left to an appeals process that has no guarantee of being successful or proceeding expediously.

As for the first *Turner* factor, whether the regulation has a valid, rational connection to a legitimate state interest, Defendant seems to put forth four: security risks, liability risks, administrative and financial burdens, and favoritism toward one group of inmates.  While some of these may be legitimate state interests, none are rationally connected to the Policy:

- Security Risk.  Plaintiff is not a flight risk.  Defendant does not dispute that fact but merely says her bond was revoked because of failure to meet certain conditions.  But this bond revocation did not involve flight.  Moreover, if Plaintiff

is forced to carry to term, she will need to be transported for prenatal care and delivery. If the jail is able to transport her securely for those medical appointments, then surely they are able to transport her securely for the abortion. Lastly, a court order does nothing to make the transport more safe; to the contrary, the sheriff is in the best position to make arrangements to ensure security. Defendant has thus failed to show that the Policy reasonably relates to a legitimate interest in maintaining security.

- Liability Risks. The concern for liability risk is also unfounded. Defendant is a state actor and therefore immune from damages under Alabama law. *See Ex Parte Donaldson*, 80 So.3d 895, 899 (Ala. 2011). This is in contrast to *Victoria W.* where the court found that the prison officials may have been liable absent a court order. In any event, Defendant articulates no legal basis for his apparent belief that a court order would absolve him of liability arising from his transportation of an inmate to and from an abortion clinic.

- Administrative and Financial Burdens. Defendant's theory seems to be that the Policy reduces the number of off-site transports and thus reduces those occasions when deputies are pulled away from their functions at the jail to escort inmates off-site. Plaintiff has averred, and Defendant has not contested, that if she is furloughed she can provide her own transportation to the clinic for the abortion and that private funding is available for the costs of the procedure. Thus, no substantial costs will be borne by Defendant. Even if Defendant were required to transport Plaintiff to the health care center, a court order does nothing to change that fact. In other words, assuming that a court order for an abortion is eventually

4

granted, albeit after Policy-induced delay, resources will eventually be expended

for that transport.  Ironically, if the inmate is permitted to attend the hearing on

her request for a court order, she must be escorted to and from that hearing, and

more jail resources will have been expended because of the Policy, not less.[2]

Moreover, unlike in *Victoria W.* where the abortion procedure would take

multiple visits to a provider further away, and require overnight stays, Ms. Doe

can have the abortion performed in one day in Huntsville.

- Favoritism. Defendant's argument in this regard is unfounded, especially given
  that requests for abortion transport are very rare.  Moreover, it would not be
  "favoritism" to treat abortion as any other medically necessary procedure by not
  requiring a court order. There is no other medical procedure like abortion.

In sum, Defendant's alleged justifications for the Policy are baseless and irrational.  This

conclusion is supported by the Third Circuit's decision in *Monmouth County Correctional

Institutional Inmates v. Lanzaro*, where the court found a similar prohibition on inmates' access

to abortion to be unsupported by security and safety concerns.  834 F.2d 326.  The court found

the policy "simply inexplicable in terms of legitimate security concerns."  *Id.* at 338.  The Policy

therefore fails the first prong of the *Turner* test and must be struck down.

As to the second *Turner* factor, whether there are alternative means for Plaintiff to obtain

an abortion, Defendant does not dispute that he will not transport an inmate for an "elective"

---

[2]  If, alternatively, the Policy results in a judicial veto of an inmate's decision to end a pregnancy,
far greater jail resources will be expended to provide pre-natal and delivery care, including an
off-site transport for her delivery, if she remains in custody.  *Cf. Monmouth County*, 834 F.2d at
341 (observing that accommodation of an inmate's right to choose an abortion "certainly
imposes no greater burdens than already exist under the County's accepted responsibility to
provide all pregnant inmates with proper pre- and post-natal care").

abortion absent a court order.  Here, the district court judge of Lauderdale County said she would deny a motion for transport for an abortion (Ex. 7).  Thus, there is no alternative means for Plaintiff to obtain an abortion.

As to the third *Turner* factor, the impact on prison resources is discussed *supra,* in the context of Defendant's argument about administrative and financial burdens.

The fourth and final *Turner* factor analyzes whether there are "ready alternatives" for accommodating the inmates' constitutional rights.  *Turner*, 482 U.S. at 90.  Plainly, Defendant could accommodate inmate requests for elective abortions internally at the jail, at no cost to valid penological interests.[3]  And the "ready alternative" cannot be the court order itself – the district court of Lauderdale County has said she would deny Plaintiff's request for a transport.  For all the reasons set forth above, Defendant's articulated interests are insufficient to justify the Policy, which thus fails under *Turner*.

## II. Defendant Has Demonstrated Deliberate Indifference to Plaintiff's Serious Medical Need.

Plaintiff also is likely to succeed on her argument that Defendant is exhibiting deliberate indifference to her medical needs.  It is axiomatic that Defendant is obligated "to provide medical care for those whom it is punishing by incarceration."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Deliberate indifference occurs when prison officials "deny reasonable requests for medical treatment" and the denial results in "undue suffering or the threat of tangible residual injury."  *Monmouth County*, 834 F.2d at 346 (citation omitted).  Deliberate indifference also occurs when prison officials prevent an inmate from receiving treatment or otherwise deny access to treatment.  *Id.* at 347; *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when

---

[3]  Such a policy exists in the federal system, *see* 28 C.F.R. § 551.23.

they deny, delay or intentionally interfere with medical treatment") (internal quotation marks omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (deliberate indifference occurs when prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it").  The question under the Eighth Amendment is whether jail officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to [her] future health." *Farmer*, 511 U.S. at 843. Indeed, Plaintiff is being forced by Defendant to carry an unwanted pregnancy.

Abortions are a serious medical need, and a need that depends on prompt action. *Monmouth County*, 834 F.2d at 348-49; *accord Reprod. Health Servs. v. Webster*, 662 F. Supp. 407, 429 (W.D. Mo. 1987).  The Third Circuit explained in *Monmouth County* that pregnancy itself need not be an abnormal medical condition requiring remedial medical attention in order to come within the purview of *Estelle*.  Rather, the relevant medical care is that necessary to effectuate an inmate's choice to terminate her pregnancy.  Prison officials display deliberate indifference to the need for such medical care by prohibiting access to it, and leaving the inmate no way to circumvent that prohibition except to try to obtain a court order.  That is especially the case because obtaining a court order delays the abortion procedure, which alone increases medical risks and amounts to deliberate indifference. *Monmouth County*, 834 F.2d at 348-49.

Here, Ms. Doe's uncontested declaration demonstrates that Defendant's actions have delayed her – and, as of now, have prohibited her – from obtaining an abortion.  Plaintiff's claim is therefore ripe.  Indeed, Defendant does not dispute that Ms. Doe has been requesting an abortion since she entered the jail almost three weeks ago.  Although abortion is extremely safe, it is well-established that delaying an abortion increases health risks. *See, e.g., Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786, 796 (7th Cir. 2013), cert. denied,

7

134 S. Ct. 2841, 189 L. Ed. 2d 807 (2014) ("delay in obtaining an abortion can result in the progression of a pregnancy to a stage at which an abortion would be less safe, and eventually illegal."); Linda Bartlett, et al., *Risk Factors for Legal Induced Abortion-Related Mortality in the United States*, 103 Obstet. & Gynecol. 729, 735 (2004).  Defendant does not dispute as much. Def.'s Br. at 3 ("To be clear, there is no dispute that such a delay would lead to the harms identified by Plaintiff in her Complaint and Motion.").

Given that Ms. Doe's request for court order will be denied, absent an immediate injunction from this Court Ms. Doe will be forced to carry a pregnancy to term and give birth, which will subject her to health risks.  Defendant's actions have already pushed her later into her pregnancy.  Nevertheless, Defendant continues to enforce his policy of requiring a court order knowing it is having the practical effect of delaying Ms. Doe from having an abortion, and may even prohibit her from having an abortion absent action by this Court.  These facts demonstrate a policy of deliberate indifference to inmates seeking abortion care.  The Policy therefore violates the Eighth Amendment.

Date: July 27, 2015

Respectfully submitted,

s/Randall C. Marshall

_____

Randall C. Marshall
ASB-3023-A56M
ACLU FOUNDATION OF ALABAMA, INC.
P.O. Box 6179
Montgomery, AL 36106-0179
rmarshall@aclualabama.org
(334) 420-1741

Elizabeth Berry
ASB-7319-H37B
205 S. Seminary Street, Ste. 219

8

Florence, Alabama 35630
(256) 762-1027
(256) 740-8203 (facsimile)
eemberry3@gmail.com

Brigitte Amiri*
ACLU FOUNDATION
New York Bar Number 3017167
125 Broad Street, 18th FL
New York, NY 10004
bamiri@aclu.org
212-549-2633

*Attorneys for the Plaintiff*

*\*Appearing pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of July, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will electronically send notification of such filing to the following:

Kendrick E. Webb
Jamie Helen Kidd
Webb & Eley, PC
7475 Halcyon Point Drive (36117
P.O. Box 240909
Montgomery, AL 36124
kwebb@webbeley.com
jkidd@webbeley.com


/s Brigitte Amiri